United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILSON HERNANDEZ FERNANDEZ,<br>Petitioner,<br>v.<br>WARDEN OF THE CALIFORNIA CITY CORRECTIONS CENTER, *et al.*,<br>Respondents. | Case No. 1:26-cv-03812 (EJD)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

This habeas action concerns the detention of Petitioner Wilson Hernandez Fernandez, a noncitizen who has lived in the United States since 2000. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner was re-detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus in part, and orders that Respondents provide him with a bond hearing.

## I. BACKGROUND

Petitioner is a citizen of Cuba who was lawfully paroled into the United States on March 14, 2000. Dkt. No. 10-2 at 2. Records submitted by Respondents indicate that following his entry, Petitioner filed for employment authorization with USCIS, but otherwise, neither party has described the status of Petitioner's immigration case following his parole (i.e., whether he was granted legal permanent residence status, placed in removal proceedings, etc.). In any event, both parties have indicated that Petitioner was previously released from immigration custody, and has been living at liberty since.

Respondents also submitted a RAP sheet in opposition to the petition showing that Petitioner has been convicted of numerous controlled substance offenses over the last few decades, with the first conviction purportedly occurring in 2002, and the most recent on November 16, 2022. Dkt No.10-2 at 2–3. Petitioner was re-detained by U.S. Immigration and Customs and Enforcement ("ICE") on March 28, 2026 following an encounter with ICE officers in Miami, Florida.

## II. DISCUSSION

Petitioner argues that his prolonged detention without a finding that he is a flight risk or danger to the community violates due process. *See* Dkt. No. 1 ¶¶ 46–49. In response to the Petition, Respondents only argue that "Petitioner is [] an 'applicant for admission' who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)." Dkt. No. 10 at 1 (quoting 8 U.S.C. § 1225(b)(2)).

Respondents' argument has been widely rejected across this circuit, and indeed, throughout the United States. "[F]or the reasons set forth in numerous district court decisions in the past few months, § 1225(b)(2) does not apply to persons like Petitioner who were previously taken into custody and then released (such as under parole or supervised release)." *Bautista Villanueva v. Bondi*, No. 25-CV-4152-ABA, 2026 WL 100595, at *1 (D. Md. Jan. 14, 2026) (collecting cases); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *7 (N.D. Cal. Sept. 12, 2025); *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025). Given Respondents' failure to articulate a lawful basis for Petitioner's detention, the Court next turns to his due process claim.

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Though neither party has specified exactly what Petitioner's custody status was between the time of his release in 2000 to the date of his detention on March 28, 2026, Petitioner's allegations and records submitted by Respondents indicate that Petitioner was paroled into the United States. *See* Dkt. No. 10-2 at 2; Dkt. No. 1 ¶ 23. Given that Petitioner was released into the interior of the United States—and the fact that Respondents have only argued that 8 U.S.C. § 1225(b)(2) controls his detention—the court need not determine precisely what statute applies here because Petitioner has a protected liberty interest in his continued freedom. *See Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012-DAD-SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026) (noting that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme"); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (same). "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-CV-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482).

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private

United States District Court
Eastern District of California

interest in remaining out of immigration custody because he has been released, presumably pending civil removal proceedings or adjudication of other immigration relief, for over two decades. In the intervening years he has developed ties in his community working and supporting his family. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). The record before the Court indicates that there was no independent finding by a neutral arbiter that Petitioner was neither a flight risk nor danger to the community before Petitioner's release was revoked and he was re-detained.

The record, however, shows that Petitioner may have violated the terms or conditions of his release. The relevant question though is whether his criminal record constitutes changed circumstances that would justify an immigration judge revoking his liberty. In instances where the Government has previously detained and then released a noncitizen, courts in this Circuit have generally ordered release and a pre-deprivation hearing. But some courts have found that, under circumstances where an individual has been arrested or charged with a serious offense, "providing Petitioner with notice and a pre-deprivation hearing [prior to detention] would have been impracticable and/or would have motivated his flight." *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT-SKO, 2025 WL 3265446, at *12 (E.D. Cal. Nov. 24, 2025) (collecting cases ordering bond hearings, rather than release, under similar circumstances). Thus, in light of Petitioner's extensive criminal record, the Court concludes that prompt, post-deprivation process is required here.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a

hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d at 970; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Id.* at 1094. Providing Petitioner with a post-deprivation hearing here would impose a minimal burden on the Government relative to the due process concerns.

## III. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED in party. IT IS HEREBY ORDERED that:

1. Petitioner SHALL be provided a *substantive* bond hearing within fourteen (14) days at which an Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if he is released. The bond hearing may be moved to a later date upon Petitioner's request.

2. At any such hearing, the Government SHALL bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. Petitioner SHALL be allowed to have counsel present.

3. Respondents are directed to file a notice of compliance once the bond hearing has occurred. The notice should attach the Immigration Judge's order and/or describe its substantive findings.

4. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: July 23, 2026

EDWARD J. DAVILA
United States District Judge